**Sarit SHMUELI, Plaintiff–Appellee,**

v.

**THE CITY OF NEW YORK, New York City Police Department, Martin Lieberman, and John Does 1–10, the names being fictitious, Defendants,**

**Linda Fairstein and Stacey Mitchell, Defendants–Appellants.**

**Docket No. 03–0287–PR.**

United States Court of Appeals, Second Circuit.

Argued: April 20, 2005.

Decided: Sept. 14, 2005.

Sarit Shmueli, New York, New York, Plaintiff–Appellee pro se.

Michael S. Morgan, Assistant District Attorney, New York, New York (Robert M. Morgenthau, District Attorney for New York County as Special Assistant Corporation Counsel, New York, New York, on the brief), for Defendants–Appellants.

Before: KEARSE, JACOBS, and STRAUB, Circuit Judges.

KEARSE, Circuit Judge.

Defendants Linda Fairstein and Stacey Mitchell, former Assistant District Attorneys for New York County (collectively the "ADAs"), appeal from so much of an order of the United States District Court for the Southern District of New York, Sidney H. Stein, *Judge*, as denied their motions pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss, on the ground of absolute prosecutorial immunity, the claims of plaintiff Sarit Shmueli against them for malicious prosecution. To the extent pertinent to this appeal, the amended complaint alleges that appellants, while in office, prosecuted Shmueli on charges that she harassed her former domestic partner, defendant Martin Lieberman, despite the ADAs' knowledge that she was innocent of those charges, and that the prosecution was motivated by Fairstein's friendship with Lieberman. The district court denied the ADAs' absolute-immunity-based motions, ruling that, if the allegations of Shmueli's amended complaint were true, the ADAs had acted without jurisdiction, which would make the defense of absolute immunity unavailable. On appeal, the ADAs contend that the defense of absolute immunity spares an official from any scrutiny of her motives and that the district court thus erred in equating an allegedly improper prosecutorial state of mind with a lack of prosecutorial jurisdiction. For the reasons that follow, we agree; and to the extent that the district court denied appellants' absolute-immunity-based motions to dismiss claims for damages, we reverse.

## I. BACKGROUND

■ The New York State ("State") prosecution of Shmueli is a matter of public record, of which we take judicial notice. In determining whether the ADAs are entitled to absolute immunity with respect to that prosecution, we accept the allegations of Shmueli's amended complaint as true. *See, e.g., Kalina v. Fletcher,* 522 U.S. 118, 122, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997); *Buckley v. Fitzsimmons,* 509 U.S. 259, 261, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

### A. *The 1998 Prosecution of Shmueli*

In May 1998, the State filed a 93–count complaint (the "criminal complaint") against Shmueli in the Criminal Court of the City of New York, County of New York ("Criminal Court"). *See People v. Shmueli,* Crim. Compl. No. 98N042120 (N.Y.Crim.Ct. May 6, 1998). The criminal complaint was sworn to by a police detective based on information the detective had received from, *inter alios,* Lieberman, his friends, family members, and business associates, as well as friends and business associates of Lieberman's relatives, and officials at Lieberman's daughter's school. The criminal complaint alleged that Shmueli had subjected Lieberman and his ex-wife, children, friends, and associates to numerous acts of harassment, including repeated letters to third persons disclosing

private information about Lieberman or private information that Lieberman had shared with Shmueli about other persons while Lieberman and Shmueli were living together as domestic partners; an act of vandalism on a car belonging to Lieberman's ex-wife and being used by his son; the placement of shattered glass covered with a red substance at Lieberman's door; and the posting, at Lieberman's minor daughter's school, of flyers making libelous and scandalous statements about the relationship between Lieberman and his daughter. The criminal complaint also alleged that Shmueli had made numerous harassing "hang up" telephone calls. In support of that allegation, the detective stated that he had reviewed records for the telephone at Shmueli's Manhattan apartment for the period in question and had found approximately 59 calls from that telephone to Lieberman's home or work number, with each connection lasting less than one minute. The criminal complaint charged Shmueli with one count of Harassment in the Second Degree, one count of Menacing in the Second Degree, and 91 counts of Aggravated Harassment in the Second Degree.

The case against Shmueli was never tried. In March 2002, all charges were dismissed on statutory speedy trial grounds, without State opposition.

### B. *The Amended Complaint's Allegations Against the ADAs*

Shmueli commenced the present action in February 2003; represented by counsel, she filed an amended complaint in May 2003. The amended complaint, asserting claims under 42 U.S.C. § 1983 and state law, alleges that Fairstein, Mitchell, Lieberman, the City of New York (the "City"), and others conspired to prosecute her for crimes of which they knew she was innocent, subjecting her to, *inter alia,*

false arrest, false imprisonment, assault and battery, and malicious prosecution. Shmueli alleges that the motivation for her arrest and prosecution was a personal relationship between Fairstein and Lieberman. The allegations of the amended complaint include the following.

Shmueli and Lieberman had lived together in Shmueli's apartment for some two years until May 1997, when Shmueli asked Lieberman to move out. (*See* Amended Complaint ¶¶ 14–15.) The amended complaint alleges that after Lieberman moved, he threatened Shmueli that "he and his 'friend ADA Fairstein'" (*id.* ¶¶ 15, 16) would "make her life miserable if Plaintiff did not continue the relationship" (*id.* ¶ 15) and would " 'destroy her life' " if Shmueli did not reimburse Lieberman for contributions he had made towards rent while they lived together (*id.* ¶ 16).

The amended complaint alleges that in November 1997, Shmueli received numerous telephone calls from Fairstein and Mitchell, threatening to arrest Shmueli if she did not come to the District Attorney's office for a meeting (*see id.* ¶ 22); that in mid-November Shmueli, accompanied by counsel, attended a meeting with the ADAs, during which Shmueli was falsely accused of sending letters and making telephone calls to Lieberman (*see id.* ¶ 23); and that on or about May 5, 1998, on the instruction of the ADAs, City police officers falsely arrested and falsely imprisoned Shmueli (*see id.* ¶ 25).

The amended complaint alleges that Lieberman had bragged to Shmueli that Fairstein "had instructed him as to what types of harassment would fall under her personal jurisdiction as an assistant district attorney" (*id.* ¶ 24), and that "all of the defendants acted in conspiracy to maliciously prosecute Plaintiff SHMUELI for crimes

that they knew she was innocent of" (*id.* ¶ 19):

> In spite of knowing that the charges against Plaintiff SHMUELI were false, in consideration of her personal relationship with Defendant LIEBERMAN, Defendant FAIRSTEIN, along with Defendant MITCHELL, wrongfully, knowingly and maliciously prosecuted Plaintiff SHMUELI for various crimes, all of which they knew she was innocent of committing.

(*Id.* ¶ 31.) The amended complaint alleges that, following Shmueli's arrest, Fairstein, Mitchell, and others contrived to prolong the period during which Shmueli would remain in custody without being able to post bail and to prolong the criminal proceedings with the intent of harassing Shmueli and increasing the cost of defending herself against the false criminal allegations. (*See id.* ¶¶ 26, 32.) The criminal charges against Shmueli were dismissed on March 22, 2002.

The amended complaint requested $100,000,000 in compensatory damages and $100,000,000 in punitive damages, as well as unspecified injunctive and declaratory relief.

### C. The Ruling of the District Court as to Absolute Immunity

The ADAs moved pursuant to Rule 12(b)(6) to dismiss the claims against them on various grounds, including failure to state a claim on which relief can be granted and absolute immunity. In an Order of Partial Dismissal dated October 3, 2003, the court, *inter alia,* granted the ADAs' motions to dismiss (1) all claims against them in their official capacities, (2) all state-law claims except certain claims for malicious prosecution, and (3) all claims for malicious prosecution—whether under § 1983 or state law—that were based on events that occurred prior to Shmueli's arraignment. In sum, the court denied the ADAs' motions only to the extent that they sought dismissal of the § 1983 and state-law claims against them in their individual capacities for malicious prosecution in connection with the events following Shmueli's arraignment (the "postarraignment malicious prosecution claims").

To the extent pertinent to the present appeal, the court rejected the ADAs' defense of absolute immunity on the postarraignment malicious prosecution claims, stating its reasons on the record as follows:

> Absolute immunity does confer broad protection upon prosecutors from civil liability for their official duties. Yet, "where the prosecutor acts without clear jurisdiction and without any colorable claim of authority the prosecutor loses the absolute immunity he would otherwise enjoy." *Rodrigue[s] v. City of New York,* 193 A.D.2d 79, 86, 602 N.Y.S.2d 337 (1st Dept.1993). *Plaintiff specifically alleges that the ADAs knew the charges against her were false and knew that Shmueli was innocent of the alleged offenses, but the ADAs prosecuted it [sic] nonetheless. Thus, plaintiff has sufficiently alleged acts by the ADA defendants that, if true, would be "in clear absence of all jurisdiction."* So, ... at least on a 12(b)(6) motion, there is enough here for me to say that absolute immunity does not bar this 1983 claim as of now—I repeat, as of now.

(Transcript, October 3, 2003 ("Tr.")), at 16–17 (emphasis added).

## II. DISCUSSION

On this appeal, the ADAs have challenged so much of the district court's order as ruled that they were not entitled to an immediate absolute-immunity-based dismissal of Shmueli's postarraignment malicious prosecution claims against them. To

the extent that those claims seek money damages, we find merit in the ADAs' appeal.

### A. *Appellate Jurisdiction*

■ Preliminarily, we note that, despite the absence of a final judgment, we have jurisdiction to entertain the present appeal, which seeks review only of so much of the district court's order as rejected the ADAs' Rule 12(b)(6) motions to dismiss on the ground of absolute immunity. As the existence of absolute immunity protects an official not only from liability but also from suit, the validity of the defense should be determined at an early stage. Hence, an interlocutory order rejecting the defense is immediately appealable under the collateral order doctrine to the extent that the rejection turned on an issue of law. *See generally Mitchell v. Forsyth*, 472 U.S. 511, 525, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Bernard v. County of Suffolk*, 356 F.3d 495, 501–02 (2d Cir.2004) ("*Bernard*"); *Hill v. City of New York*, 45 F.3d 653, 659–60 (2d Cir.1995) ("*Hill*"); *cf. Munafo v. Metropolitan Transportation Authority*, 285 F.3d 201, 210–11 (2d Cir. 2002) (same with respect to a defense of qualified immunity).

■ Further, although absolute immunity is an affirmative defense whose availability depends on the nature of the function being performed by the defendant official who is alleged to have engaged in the challenged conduct, *see, e.g., Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Bernard*, 356 F.3d at 502–03; *Hill*, 45 F.3d at 660–61; *Lee v. Willins*, 617 F.2d 320, 321–22 (2d Cir.), *cert. denied*, 449 U.S. 861, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980), the nature of that function is often clear from the face of the complaint. In that circumstance, the absolute immunity defense may be resolved as a matter of law on a motion to dismiss the

complaint pursuant to Rule 12(b)(6). *See, e.g., Imbler*, 424 U.S. at 416–17, 96 S.Ct. 984; *Bernard*, 356 F.3d at 501–02; *Hill*, 45 F.3d at 657; *Lee v. Willins*, 617 F.2d at 321.

In the present case, the district court, in denying the ADAs' absolute-immunity-based motions to dismiss, indicated that the defense might be upheld at some later time. (*See* Tr. 17 ("absolute immunity does not bar this 1983 claim as of now—I repeat as of now").) However, its denial of the motions for an immediate dismissal pursuant to Rule 12(b)(6) constituted a ruling as to the legal sufficiency of the amended complaint's allegations to defeat the defense. (*See* Tr. 16–17 (stating that the assertions "that the ADAs knew the charges against [Shmueli] were false and knew that Shmueli was innocent of the alleged offenses, but the ADAs prosecuted it [*sic*] nonetheless .... sufficiently alleged acts by the ADA defendants that, if true, would" cause them to "lose[ ] the absolute immunity [t]he[y] would otherwise enjoy") (internal quotation marks omitted).) This was a ruling of law that is immediately appealable.

### B. *Absolute Immunity*

■ It is by now well established that "a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution," *Imbler*, 424 U.S. at 410, 96 S.Ct. 984, "is immune from a civil suit for damages under § 1983," *id.* at 431, 96 S.Ct. 984. *See, e.g., Kalina v. Fletcher*, 522 U.S. 118, 124, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997) (such a prosecutor "[i]s not amenable to suit [for damages] under § 1983"); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) ("acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his

role as an advocate for the State, are entitled to the protections of absolute immunity"); *see also Imbler*, 424 U.S. at 420, 96 S.Ct. 984 ("The Courts of Appeals . . . . are virtually unanimous that a prosecutor enjoys absolute immunity from § 1983 suits for damages when he acts within the scope of his prosecutorial duties."). The rationale for conferring absolute immunity in such circumstances is that "[t]he public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." *Id.* at 424–25, 96 S.Ct. 984.

Because the immunity attaches to the official prosecutorial function, *see, e.g., Imbler*, 424 U.S. at 430, 96 S.Ct. 984, and because the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions, *see id.*, the prosecutor has absolute immunity for the initiation and conduct of a prosecution "unless [he] proceeds in the clear absence of all jurisdiction," *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir.1987) (*"Barr"*). A prosecutor engaging in "prosecutorial activities intimately associated with the judicial phase of the criminal process" loses "the absolute immunity he would otherwise enjoy" only if he "acts without any colorable claim of authority." *Id.*

The scope of a prosecutor's jurisdiction is determined by law. In considering whether a given prosecution was clearly beyond the scope of that jurisdiction, or whether instead there was at least a colorable claim of authority, *see, e.g., id.* ("at least a semblance of jurisdiction"), we inquire whether the pertinent statutes may have authorized prosecution for the charged conduct, *see, e.g., id.* at 361–62; *Bernard*, 356 F.3d at 504; *Schloss v. Bouse*, 876 F.2d 287, 291 (2d Cir.1989).

Once the court determines that the challenged prosecution was not clearly be-

yond the prosecutor's jurisdiction, the prosecutor is shielded from liability for damages for commencing and pursuing the prosecution, regardless of any allegations that his actions were undertaken with an improper state of mind or improper motive. *See, e.g., Bernard*, 356 F.3d at 503; *id.* at 502 ("a defendant's motivation in performing such advocative functions [as deciding to prosecute] is irrelevant to the applicability of absolute immunity").

For example, a defense of absolute immunity from a claim for damages must be upheld against a § 1983 claim that the prosecutor commenced and continued a prosecution that was within his jurisdiction but did so for purposes of retaliation, *see, e.g., Barr*, 810 F.2d at 360–62, or for purely political reasons, *see, e.g., Bernard*, 356 F.3d at 504 ("the fact that improper motives may influence his authorized discretion cannot deprive him of absolute immunity"). A prosecutor is also entitled to absolute immunity despite allegations of his "knowing use of perjured testimony" and the "deliberate withholding of exculpatory information." *Imbler*, 424 U.S. at 431 n. 34, 96 S.Ct. 984. Although such conduct would be "reprehensible," it does not make the prosecutor amenable to a civil suit for damages. *Id.* In sum, the nature of absolute immunity is such that it "accords protection from . . . any judicial scrutiny of the motive for and reasonableness of official action." *Robison v. Via*, 821 F.2d 913, 918 (2d Cir.1987). "[In] the realm of absolute immunity, . . . evaluation of motive and reasonableness is forbidden . . . ." *Id.* at 920; *see, e.g., Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir.1994) (the absolute character of absolute immunity is that it "protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate"). These principles are not affected by allegations that improperly moti-

vated prosecutions were commenced or continued pursuant to a conspiracy. *See, e.g., id.; Bernard,* 356 F.3d at 503.

■ The above principles, dealing with claims brought under § 1983, also protect a prosecutor against malicious prosecution claims brought under state law. *See, e.g., Rudow v. City of New York,* 822 F.2d 324, 329 (2d Cir.1987); *Schanbarger v. Kellogg,* 35 A.D.2d 902, 902, 315 N.Y.S.2d 1013, 1015–16 (1970), *appeal dismissed,* 29 N.Y.2d 649, 324 N.Y.S.2d 1033, 273 N.E.2d 321 (1971), *cert. denied,* 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789 (1972). *See also Buckley,* 509 U.S. at 274 n. 5, 113 S.Ct. 2606 (indicating that the Court's conclusion that absolute immunity protects a prosecutor against § 1983 claims in the nature of malicious prosecution was based in part on the "common-law tradition of immunity for a prosecutor's decision to bring an indictment, whether he has probable cause or not"); *Imbler,* 424 U.S. at 424, 96 S.Ct. 984 (same principles require conferral of absolute immunity for damages claims under § 1983 and state law).

■ In the present case, the undismissed claims against the ADAs are claims under § 1983 and state law for malicious prosecution based solely on events following Shmueli's arraignment. As set out in Part I.B. above, the amended complaint's only allegations of postarraignment malicious prosecution are that the ADAs "maliciously prosecuted [Shmueli] for various crimes, all of which they knew she was innocent of committing" and "intentionally ... delayed the criminal proceedings with the intent of harassing" her (Amended Complaint ¶¶ 31–32). The allegations that the ADAs prosecuted Shmueli and continued with the prosecution describe only functions for which a prosecutor is normally accorded absolute immunity.

The district court ruled that the amended complaint's allegations that the ADAs prosecuted Shmueli despite knowing that the charges against her were false and that Shmueli was innocent were "sufficient[ ] alleg[ations]" that the ADAs acted "in clear absence of all jurisdiction." (Tr. 17 (internal quotation marks omitted).) But that ruling confused jurisdiction with state of mind.

The jurisdiction of the ADAs to prosecute Shmueli depended on the authority conferred by the New York statutes. Looking to the versions of the pertinent statutes that were in effect when Shmueli was prosecuted in 1998, we note that the New York Penal Law prohibited aggravated harassment in the second degree, which was defined to include communications by telephone, mail, or other forms of writing, in a manner likely to cause annoyance or alarm, *see* N.Y. Penal Law § 240.30(1) (McKinney 1989, as amended in 1992), and the making of telephone calls, whether or not a conversation ensues, with no purpose of legitimate communication, *see id.* § 240.30(2) (McKinney 1989, as amended in 1992). The Criminal Court in New York County had jurisdiction of an offense if any element of the offense was committed in the county, *see* N.Y.Crim. Proc. Law § 20.40 (McKinney 1992); Shmueli was alleged to have, *inter alia,* made several dozen harassing telephone calls to Lieberman's office and his new home from her apartment in Manhattan, which is within New York County. The District Attorney for New York County had the duty to prosecute offenses within that County, *see* New York County Law §§ 700(1), 927 (McKinney 1991), and was authorized to appoint assistant district attorneys to assist him, *see id.* § 930 (McKinney 1991). These statutes plainly authorized the ADAs to prosecute Shmueli for the alleged harassment of Lieberman, his associates, and his family, described in Part I.A. above.

In sum, the postarraignment events alleged in the amended complaint consisted only of the prosecution of Shmueli in a court of competent jurisdiction on charges that were within the ADAs' authority to bring. Accordingly, the ADAs are entitled to absolute immunity against Shmueli's claims for damages for those events. The amended complaint's allegations that Shmueli was innocent and that the charges were brought for improper purposes do not deprive the ADAs of that immunity.

██ "[A]n official's entitlement to absolute immunity from a claim for damages," however, "does not bar the granting of injunctive relief," *Dorman v. Higgins,* 821 F.2d 133, 139 (2d Cir.1987); *see, e.g., Pulliam v. Allen,* 466 U.S. 522, 536–37, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984), *Hili v. Sciarrotta,* 140 F.3d 210, 215 (2d Cir.1998); *Heimbach v. Village of Lyons,* 597 F.2d 344, 347 (2d Cir.1979), or of other equitable relief. Shmueli's amended complaint requested not only damages but also equitable relief (the nature of which was not specified). Accordingly, we reverse the district court's denial of the ADAs' absolute-immunity-based motions only to the extent that they were directed to claims for damages.

## CONCLUSION

We have considered all of Shmueli's arguments that are properly before us and have found them to be without merit. For the reasons stated above, we conclude that the district court should have granted the absolute-immunity-based motions of Fairstein and Mitchell to dismiss the § 1983 and state-law postarraignment malicious prosecution claims against them for damages. We reverse the district court's denial of those motions to that extent and remand the matter for such further proceedings as are appropriate and not inconsistent with this opinion.