Alfonso HARRELL, Plaintiff,

v.

CITY OF NEW YORK, Detective Robert Dewhurst, Detective Sylvia Bone, Detective Hon Ora, and Assistant District Attorney Nicole Itkin, Defendants.

15–CV–667

United States District Court, E.D. New York.

Signed April 21, 2016

Jennifer Ann Bonjean, Bonjean Law Group, 1000 Dean Street, Ste. 345, Brooklyn, NY 11238, Tel: 718–875–1850, Fax: 718–230–0582, jennifer@bonjeanlaw.com, for Alfonso Harrell.

Matthew Bridge, Matthew W McQueen, New York City Law Department, 100 Church Street, New York, NY 10007, Tel: (212)356–2347, Fax: 212–356–3509, mbridge@law.nyc.gov, mmcqueen@law.nyc.gov, for City of New York, Detective Robert Dewhurst, Detective Sylvia Bone, Detective Honora, Assistant District Attorney Nicole Itkin.

## MEMORANDUM & ORDER

Jack B. Weinstein, Senior United States District Judge.

### Table of Contents

I. Introduction . . . 182

II. Facts . . . 182

III. Procedural History . . . 184

IV. Law . . . 185

 A. Summary Judgment . . . 185

 B. Official Immunity . . . 185

 1. Absolute Immunity . . . 185

 2. Qualified Immunity . . . 185

V. Application of Law to Facts . . . 186

VI. Conclusion . . . 187

## I. Introduction

On August 25, 1993, an unidentified man was discovered brutally murdered in a park in Brooklyn. Nearly 17 years later, Alfonso Harrell was arrested for the murder and indicted by a grand jury. In March 2012, shortly after the start of his trial, the district attorney's office obtained dismissal of the charges against him.

Plaintiff commenced this action against the City of New York, the New York Police Department detectives who arrested him, and the assistant district attorney who prosecuted him. He brought claims under 42 U.S.C. § 1983 for violations of his constitutional rights, as well as state law claims for assault, battery, false arrest and imprisonment, malicious prosecution, and intentional and negligent infliction of emotional distress.

Defendants moved for summary judgment. Plaintiff conceded to the dismissal of all of his claims except for those against Assistant District Attorney Nicole Itkin. Because she is entitled to absolute immunity, defendants' motion is granted.

## II. Facts

On or about August 25, 1993, an unidentified man was shot dead in St. John's Park in Brooklyn, New York. Defs.' Local R. 56.1 Statement of Undisputed Facts, Mar. 7, 2016, ECF No. 37 ("56.1 Statement"), at ¶ 1. When police arrived on the scene, the man was found lying on a park bench, with wounds to his upper right chest and right arm, and with most of his head missing. *Id.* at ¶ 2. An autopsy concluded that the cause of death was shotgun wounds to the head, torso, and extremity resulting in injury to the brain, heart, aorta, lungs, and liver. *Id.* at ¶ 3.

On March 24, 1994, Kevin Taylor, an eyewitness to the shooting, told the police that three men, including one known to him as "Kato," was responsible for the shooting. Taylor said that "Kato" pulled out a shotgun and fired two or three shots at the unidentified man. After viewing a photo array, Alfonso Harrell was identified by Mr. Taylor as the man known to him as "Kato." *Id.* at ¶ 4. Kevin Taylor was re-interviewed by New York Police Department Detective Neglia on January 22, 1999. He confirmed the information he gave in his original interview. *Id.* at ¶ 5.

On November 10, 1999, Miguel Ortiz gave a statement to Detective Neglia indicating that he was an eyewitness to the murder of the unidentified man, and that a person he knew as "Kato" was one of three men responsible for the murder. After viewing photo arrays, Ortiz identified Alfonso Harrell as the person he knew as "Kato." *Id.* at ¶ 6. On January 28, 2001, Loretta Ryant informed New York Police Department Detective Barba that she was an eyewitness to the murder of the unidentified man, and that a person she knew as "Kato" was responsible for the shooting. She identified a photograph of Alfonso Harrell as the person she knew as "Kato." *Id.* at ¶ 7.

The investigation of the murder of the unidentified man was reassigned to Cold Case Squad Detective Sylvia Bone on June 14, 2007. *Id.* at ¶ 11.

On January 13, 2010, the case was assigned to Assistant District Attorney Nicole Itkin ("ADA Itkin") for prosecution. ADA Itkin reviewed the case file and, on February 11, 2010, informed Cold Case Squad Detective Bone that she intended to begin the indictment process as early as the following month. *Id.* at ¶¶ 13, 16; Decl. of Matthew McQueen in Supp. of Defs.' Mot. for Summ. J., Mar. 7, 2016, ECF No. 36 ("McQueen Deck"), at Ex. G.

The grand jury heard testimony from Loretta Ryant and Miguel Ortiz on March 10 and 11, 2010. 56.1 Statement at ¶¶ 17–18. On March 19, 2010, ADA Itkin swore out the criminal complaint for murder in

the second degree against Harrell based upon information received from Detective Vincent Navarro, records from the medical examiner's office, and witnesses who saw Alfonso Harrell shoot the unidentified man with a shotgun. *Id.* at ¶ 19; McQueen Deck at Ex. D.

On the same day, Detectives Bone and Dewhurst drove to Lansdowne, Pennsylvania and interviewed plaintiff. Detective Bone's Follow Up Informational Report of April 23, 2010, described the meeting with plaintiff as indicating his presence at the scene:

1. On March 19, 2010, at approximately 0850 hours Det. Dewhurst accompanied by myself were in the vicinity of 155 Lexington Avenue, Lansdowne PA when we observed Alfonso Harrell. We approached Mr. Harrell and identified ourselves, and requested to speak to him in the Police Facility. Mr. Harrell stated I didn't do anything wrong in Pennsylvania. We informed him the case was from Brooklyn, New York after which he agreed to speak with us. This statement was taken in sum and substance.

2. Mr. Harrell was informed we were conducting an investigation regarding an unidentified person which he may be able to assist us in identifying. After agreeing to view photos of the victim and to assist us with this investigation, Mr. Harrell was read Miranda Warnings at approximately 1035 hours which he acknowledged and signed (statement attached).

3. Mr. Harrell was shown photos of the victim at which time he stated he did not know anything about this case at all and that it only reminds him of friends which were killed. Mr. Harrell advised us to look into those cases instead. After some time and vehemently denying any knowledge with regards to this case he was told that he was seen by several witnesses at the location.

4. Mr. Harrell then acknowledged being at the location of the homicide. He stated that prior to arriving at the scene (earlier that evening) he had visited his aunts [*sic*] house in the vicinity of Howard and Bergen St. (Anna Florence). He then left that location and went straight to his mothers [*sic*] house at 1414 Bergen (Apt. 14 I). At approximately 0045 hours Mr. Harrell states he went back outside and saw Jose and Carlos two brothers from the projects (1414 Bergen St) who informed him that they heard shots. Mr. Harrell then states he walked over to St. Johns Playground because he was nosy but not sure who he had walked over to the park with. He further states he arrived after the police were already there and had set up a crime scene. He states the officers asked if anyone knew the identity of the victim. When asked how far he was from the crime scene, he stated that he was at the location of the park bench in which the victims remains were located, and then demonstrated how close he was to the victims [*sic*] body. In which he stood up and described how he was standing over the victim, looking down at the body.

. . .

7. At the conclusion of both statements Mr. Harrell did voluntarily agree to accompany the Detectives to the Brooklyn District Attorneys Office. A written/verbal agreement was recorded.

8. Upon arrival it was discovered that an Attorney had been obtained and was representing Mr. Harrell. Mr. Harrell was subsequently placed under arrest in connection with this homicide.

McQueen Decl. at Ex. G.

On April 14, 2010, Alfonso Harrell was indicted by the grand jury for the murder of the unidentified man. 56.1 Statement at ¶ 23. His trial began on February 29,

2012. Pl.'s Response to Defs.' Local Rule 56.1 Statement of Undisputed Facts, Mar. 25, 2016, ECF No. 40 ("Pl.'s 56.1 Response"), at Ex. G (Aff. of Hermann Walz, Mar. 21, 2016), at ¶ 3. During the second day of the trial, evidence was discovered by the state court trial judge indicating that Miguel Ortiz had cooperated with the government after asking for consideration. *See id.* at Ex. G, 4; *id.* at Ex. F (Transcript from State Court Trial). Following this discovery, which was revealed to the parties during a lunch break, ADA Itkin apparently located a May 30, 2004 letter from Miguel Ortiz which detailed his history as a confidential informant and offered his services to the government as "a Good C.I." who could "get anybody you want." McQueen Decl. at Ex. B (Feb. 4, 2016 Dep. of Nicole Itkin), at Pl.'s Ex. 4. Plaintiff's state trial counsel states that this letter had never been turned over to him despite his having made a request for all information relating to Mr. Ortiz's criminal history. Pl.'s 56.1 Response at Ex. G, at ¶ 6. He also claims that he was never informed that ADA Itkin "wrote a letter to Clinton Correctional Facility at Mr. Ortiz's request, informing the facility that Mr. Ortiz was cooperating with the prosecution," or that "a detective who allegedly interviewed Mr. Ortiz at Clinton Correctional Facility in 1999 put cash money into Mr. Ortiz's commissary account." *Id.* at 7–8.

The district attorney's office dismissed all charges against plaintiff within a few days of the Ortiz letter being discovered. McQueen Decl. at Ex. B at 166:6–167:18.

## III. Procedural History

Plaintiff commenced this action on February 10, 2015, and filed an amended complaint on February 26, 2015. *See* Compl., Feb. 10, 2015, ECF No. 1; Am. Compl., Feb. 26, 2015, ECF No. 6. On June 18, 2015, defendants moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Not.

of Mot. to Dismiss the Am. Compk, June 1, 2015, ECF No. 13. In opposition to the motion, plaintiff conceded that his false arrest claim was time-barred. *See* Pl.'s Opp'n to Defs.' Mot. to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6), July 28, 2015, ECF No. 20, at 1; Hr'g Tr., Aug. 19, 2015, at 2:21–23.

A hearing on the motion was held on August 19, 2015, at which the motion to dismiss was converted into a motion for summary judgment. *See* Minute Entry, Aug. 19, 2015. The parties were permitted time to depose ADA Itkin and the police detectives involved in the investigation and arrest of plaintiff, and then to re-brief the summary judgment motion. *See* Hr'g Tr., Aug. 19, 2015, ECF No. 27.

In his opposition to the summary judgment motion, plaintiff concedes that his claims against Detectives Honora, Dewhurst, and Bone, and the City of New York should all be dismissed. *See* Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. Pursuant to Fed.R.Civ.P. 56, Mar. 21, 2016, ECF No. 39 ("Opp'n Br."), at 1; Hr'g Tr., Apr. 18, 2016, at 3:3–6, 16–19. The only remaining claims that plaintiff argues should survive summary judgment are those he alleged against ADA Itkin: the deprivation of his constitutional rights in violation of 42 U.S.C. § 1983, and state law tort claims of assault, battery, malicious prosecution, intentional infliction of emotional distress, and negligent infliction of emotional distress. Plaintiff contends that "a genuine issue of material fact exists on the question of whether Defendant Itkin violated Plaintiff's constitutional rights when: (1) she suppressed exculpatory material during the investigative phase of the case; and (2) she maliciously initiated charges against Plaintiff despite the absence of probable cause." Opp'n Br. at 1–2.

An evidentiary hearing on the summary judgment motion was held on April 18, 2016. *See* Hr'g Tr., Apr. 18, 2016.

## IV. Law

### A. Summary Judgment

"Summary judgment will be granted when it is shown that there is 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Bailey v. City of New York*, 79 F.Supp.3d 424, 439 (E.D.N.Y.2015) (quoting Fed.R.Civ.P. 56(a)). It is "appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law." *Allstate Ins. Co. v. Sidakis*, No. 13–CV–7211, 2016 WL 556869, at *6 (E.D.N.Y. Feb. 10, 2016).

"The relevant governing law in each case determines which facts are material; '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bank of Am., N.A. v. Fischer*, 927 F.Supp.2d 15, 25 (E.D.N.Y. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor." *Id.* (citing *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir.1996)).

### B. Official Immunity

#### 1. Absolute Immunity

 "Prosecutors are absolutely immune from suits for acts taken in their role as advocates." *Sclafani v. Spitzer*, 734 F.Supp.2d 288, 296 (E.D.N.Y.2010)

(citing *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). The applicability of absolute immunity depends on "the nature of the function performed." *Forrester v. White*, 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). It applies when a prosecutor undertakes actions prior to or during trial that are "intimately associated with the judicial phase of the criminal process." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343, 129 S.Ct. 855, 172 L.Ed.2d 706 (2009) (citation omitted). A prosecutor is protected by absolute immunity against assertions that he or she deliberately withheld exculpatory information, and against claims for malicious prosecution. *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir.2005); *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1149 (2d Cir.1995) ("Case law from this circuit clearly establishes that the district attorneys' activities with respect to the malicious prosecution claim, as well as all the claims relating to ... presentations to the grand jury, are covered by absolute immunity.").

 "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages 'regardless of the wrongfulness of his motive or the degree of injury caused[.]'" *Bernard v. Cty. of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) (citation omitted).

#### 2. Qualified Immunity

 Prosecutors engaged in actions that are separated from the conduct of a trial, such as advising law enforcement during a criminal investigation, enjoy the lesser protection of qualified immunity.

*Van de Kamp*, 555 U.S. at 343, 129 S.Ct. 855; *see also Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir.1995) ("Before any formal legal proceeding has begun and *before* there is probable cause to arrest, it follows that a prosecutor receives only qualified immunity for his acts.") (emphasis added). Qualified immunity shields prosecutors "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (citations omitted).

■ Qualified immunity does not require probable cause, but rather "arguable probable cause," meaning that "it was objectively reasonable for the officer to believe that probable cause existed" or that "officers of reasonable competence could disagree on whether the probable cause test was met." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir.2004) (citations omitted); *Bailey*, 79 F.Supp.3d at 452 ("Officers are entitled to qualified immunity if 'officers of reasonable competence could disagree' as to the legality of their action.") (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

■ A claim that it was objectively reasonable for an official to believe that his actions did not violate a clearly established right "has its principal focus on the particular facts of the case." *Hurlman v. Rice*, 927 F.2d 74, 78 (2d Cir.1991). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011).

■ Where there is no dispute as to the material facts, the matter of whether defendant's conduct was objectively reasonable is a question of law for the court. *See, e.g., Zellner v. Summerlin*, 494 F.3d 344, 368 (2d. Cir.2007). Summary judgment can only be granted on the basis of qualified immunity if the defendant can show that "no reasonable jury, viewing the evidence in the light most favorable to the [p]laintiff, could conclude that the defendant's actions were objectively unreasonable in light of clearly established law." *Ford v. Moore*, 237 F.3d 156, 162 (2d Cir. 2001).

## V. Application of Law to Facts

According to plaintiff, ADA Itkin failed to "disclose the defense exculpatory evidence that Miguel Ortiz was a seasoned career snitch witness who had received benefits and promises of benefits in exchange for his cooperation." Opp'n Br. at 14. Because ADA Itkin was involved with the investigation of the case against plaintiff, he argues, she is entitled to only qualified immunity. Plaintiff concludes that since ADA Itkin is only entitled to qualified immunity, she can be held liable for her suppression of the information relating to Ortiz. *Id.*; *see also* Hr'g Tr., Apr. 18, 2016, at 3:19–4:10.

■ The problem with plaintiff's argument is that it assumes the same type of immunity applies to all of a prosecutor's activities, and that if a prosecutor engages in investigative activity at any point— which is entitled to qualified immunity only—he or she loses the protection of absolute immunity for prosecutorial work. This assumption is incorrect. The law is settled that whether absolute or qualified immunity applies depends on a functional analysis to each challenged activity, and that participation in activity protected by qualified immunity does not preclude the application of absolute immunity to other, plainly prosecutorial activities. *See, e.g.,*

*Burns v. Reed,* 500 U.S. 478, 491–96, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (finding different levels of immunity applied to different activities).

 Here, it is undisputed that ADA Itkin communicated with police detectives prior to her commencement of formal prosecution proceedings. McQueen Decl. at Ex. G. It is also undisputed that ADA Itkin was in contact with police detectives when they first met with plaintiff in Pennsylvania and brought plaintiff back to New York. *Id.* Whether ADA Itkin is entitled to absolute or qualified immunity for these activities is a question about which there may be a disagreement. But it is also a question that need not be answered to resolve this motion. The purported suppression of evidence, the sole basis of plaintiff's only remaining claim, did not occur while ADA Itkin was engaging in these activities. Rather, it occurred after ADA Itkin had assumed her primary prosecutorial role. A prosecutor can only be accused of failing to disclose evidence once a requirement to make a disclosure exists. Such a requirement only comes about after the commencement of a prosecution, and is unquestionably "intimately associated with the judicial phase of the criminal process." *Van de Kamp,* 555 U.S. at 343, 129 S.Ct. 855.

Because the deprival about which plaintiff complains relates to ADA Itkin's prosecutorial role, she is entitled to absolute immunity.

Had the alleged violation of plaintiff's rights occurred during the investigatory phase of the case, when ADA Itkin would only be entitled to qualified immunity, it would be found that she is still protected as a matter of law. Her actions during the investigation of the case were what any reasonable prosecutor should do. As a matter of public policy, prosecutors should not be held liable for responsibly investigating cases, instructing police to follow-up on existing leads, and ensuring that police do not run afoul of legal requirements in performing their investigations.

Plaintiff's malicious prosecution argument must also be rejected. Prosecutors are entitled to absolute immunity from malicious prosecution claims. *See Shmueli,* 424 F.3d at 237; *Pinaud,* 52 F.3d at 1149. Plaintiff has offered no authority or persuasive reason supporting an exception to this rule. There was ample grounds for the prosecution to have commenced. As soon as a constitutional defect was discovered, the case was dismissed. Plaintiff has no grounds to proceed with this litigation.

## VI. Conclusion

Defendants' motion for summary judgment is granted. The case is dismissed without costs or disbursements. The clerk is directed to enter judgment in favor of all defendants.

SO ORDERED.