Ogunkoya v. Drake

# In the
# United States Court of Appeals
# For the Second Circuit

August Term, 2018

Argued: September 27, 2018
Decided: January 9, 2019

Docket No. 17-3235-cv

SEUN OGUNKOYA,

*Plaintiff-Appellee,*

*v.*

MARK MONAGHAN, JAMES EGAN, COUNTY OF MONROE,

*Defendants-Appellants,*

SANDRA DOORLEY, ALBERT DRAKE III, INVESTIGATOR, DARIUSZ ZYSK,
INVESTIGATOR, PETER SCHRAGE, TROOPER, MARK EIFERT, INVESTIGATOR, JOHN DOE,
RICHARD ROE,

*Defendants.*[*]

---

[*] The Clerk of Court is respectfully requested to amend the official caption as set forth above.

Appeal from the United States District Court
for the Eastern District of New York
No. 15-CV-06119, Matsumoto, *Judge*.

Before:      HALL, LYNCH, and CARNEY, *Circuit Judges*.

This appeal arises out of Plaintiff-Appellee Seun Ogunkoya's § 1983 lawsuit alleging constitutional violations during his warrantless arrest and subsequent prosecution. He was acquitted of all charges. Two Monroe County Assistant District Attorneys appeal the District Court's denial of their Rule 12(b)(6) motion to dismiss on the ground that they have absolute immunity for the violations alleged. We hold that the Assistant District Attorneys have absolute immunity from suit and thus reverse the decision of the District Court with respect to claims against these prosecutors in their individual capacities. Monroe County also appeals the District Court's denial of its Rule 12(b)(6) motion arguing that municipal liability is not warranted because the county prosecutors were state, not county, actors. Because the elements of the claim against the county are not inextricably intertwined with the question of absolute immunity, we are without appellate jurisdiction to hear the county's interlocutory appeal.

REVERSED IN PART; DISMISSED IN PART; AND REMANDED.

> MATTHEW D. BROWN, *for* Michael E. Davis, County Attorney, Monroe County, New York, *for* Defendants-Appellants.
>
> DANIEL M. WHITE, Milbank, Tweed, Hadley & McCloy, LLP, New York, NY (Alexandra Wang, Max Kelly, Milbank, Tweed, Hadley & McCloy, LLP, New York, New York, *on the brief*) *for* Plaintiff-Appellee.

PETER W. HALL, *Circuit Judge*:

This appeal principally concerns whether two Monroe County Assistant District

Attorneys, James Egan and Mark Monaghan ("the ADAs"), are absolutely immune from

civil suit for interfering in the timing of Plaintiff-Appellee Seun Ogunkoya's arraignments in several town courts as the ADAs were preparing to present the charges to a grand jury. Ogunkoya alleged that the ADAs, along with other state and county defendants, violated his Fourth and Fourteenth Amendment rights by failing to timely arraign him on four of six identity fraud and larceny charges. Because the ADAs were performing a traditional prosecutorial function when they determined that they would initiate Ogunkoya's prosecution via grand jury indictment and thus delay his arraignment on separate individual charges, we reverse the District Court's denial of absolute immunity.

Regarding Monroe County's effort to appeal the denial of its motion to dismiss, because the claims against the county are not inextricably intertwined with the question of the ADAs' immunity, we are without jurisdiction to consider the County's appeal at this time.

I.

Absolute immunity protects a prosecutor "not only from liability but also from suit." *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005). "Hence, an interlocutory order rejecting the defense [of absolute immunity] is immediately appealable under the collateral order doctrine." *Id.*

"When a district court denies immunity on a Rule 12(b)(6) motion to dismiss, 'we review the district court's denial *de novo*, accepting as true the material facts alleged in

3

the complaint and drawing all reasonable inferences in plaintiffs' favor.'" *Warney v. Monroe Cty.*, 587 F.3d 113, 120 (2d Cir. 2009) (quoting *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001)).

II.

The facts as alleged in Ogunkoya's complaint are as follows. The investigation leading to his arrest began when Home Depot reported several gift card purchases suspected to be fraudulent to the New York State Police ("NYSP"). The gift cards, totaling $28,000, were all acquired on April 26, 2014, at Home Depot stores in three Monroe County towns—Greece, Henrietta, and Irondequoit. NYSP Investigator Mark Eifert opened a criminal investigation and learned that Ogunkoya used his personal credit card for small purchases in the Greece and Henrietta stores around the same time as the gift cards were purchased. Eifert also reviewed Home Depot's surveillance tapes. Those tapes show someone other than Ogunkoya purchasing the gift cards. On January 20, 2015, Eifert prepared six felony complaints charging Ogunkoya with one count of identity theft and one count of grand larceny in each of the three towns.

A month later, acting on Eifert's knowledge and belief, but without an arrest warrant, the NYSP arrested Ogunkoya in his Brooklyn apartment. Over the course of the day, NYSP officers drove Ogunkoya to Monroe County, where he was brought for arraignment before the Henrietta Town Court around 10 P.M. The NYSP filed all six felony complaints with the Henrietta court, but the judge refused on jurisdictional

4

grounds to arraign Ogunkoya on the four complaints based on conduct alleged to have occurred in Greece and Irondequoit. The judge instructed the NYSP to have Ogunkoya arraigned on the remaining complaints during the next business day, Monday, February 23, 2015.

Ogunkoya was never arraigned in Greece or Irondequoit. Instead, a bail hearing was held that Monday in Monroe County Court. At the hearing, Ogunkoya, who was planning to sit for the bar exam in New York City the following day, asked to be arraigned on the four remaining complaints "in time for a new bail application to be made on all the charges." J. App. 11. Considering Ogunkoya a "flight risk," the ADAs argued for a $100,000 cash/$300,000 bond bail "based on the combined allegations of the six felony complaints." *Id.* The judge set Ogunkoya's bail at $100,000 cash/$300,000 bond. As alleged by Ogunkoya, "[t]his amount of bail is unusually high considering the amount of the alleged thefts [] and local custom." *Id.*

Ogunkoya's family then sought to arrange for bail, but the bail bondsman "expressed reluctance at posting a bond" because of Ogunkoya's four outstanding criminal complaints on which he had not yet been arraigned. J. App. 12. Ogunkoya's counsel wrote to ADA Egan and again requested that Ogunkoya be arraigned on the four outstanding complaints so that he could secure bail. Egan responded by email:

> There is no need to ever arraign him on the charges in the local court. He was arrested on the Henrietta charges and received his prompt arraignment on them as required by the CPL. The purpose of CPL 140.20 is to ensure a person who is arrested gets a prompt arraignment and doesn't have to sit

5

in jail waiting for bail to be set. The other charges are essentially "sealed" charges since he has never been arrested or arraigned on them. In any event, they were all referred to the grand jury and they will be presented together. This is done frequently in cases involving charges in multiple jurisdictions.

*Id.*

Ogunkoya's counsel continued to press for arraignment, seeking a writ on the ground that "Ogunkoya was prepared to post a $300,000 bond but that the bail bondsman refused to post the bond solely because of the unarraigned charges." J. App. 13. On March 20th—28 days after his arrest—Ogunkoya was released after a Monroe County Court judge signed his bond documents. On or about May 15, 2015, a Monroe County grand jury indicted Ogunkoya on three counts of identity theft, one count from each town. At trial, the jury acquitted Ogunkoya on all charges.

After his acquittal Ogunkoya, *pro se*, filed a § 1983 lawsuit naming the NYSP officers involved in his arrest, Monroe County DA Sandra Doorley,[1] Monroe County ADAs Monaghan and Egan, and Monroe County itself. Ogunkoya amended his complaint twice, with *pro bono* counsel filing the second amended complaint. Both the NYSP and Monroe County defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6)

---

[1] Monroe County District Attorney Sandra Doorley was incorrectly sued in her individual capacity as Susan Doorley. Although the briefs list Doorley as an appellant, the District Court adopted the magistrate judge's recommendation that all claims against her be dismissed. Accordingly, nothing remains pending against her at this time, and she has no stake in the instant appeal.

arguing that Ogungoya's complaint failed to state a claim and that the prosecutors had absolute immunity. The fully briefed motions were referred to the magistrate judge.

The magistrate judge's Report and Recommendation ("R&R") construed the second amended complaint to plead the following claims against all the individual NYSP and Monroe County defendants: false arrest and false imprisonment, malicious prosecution, failure to arraign, and related claims for failure to intervene with respect to each of the preceding claims. The R&R also construed Ogunkoya's complaint to assert a *Monell* municipal liability claim against Monroe County, alleging an unconstitutional practice or custom and failure to train its officers. The magistrate judge recommended that all claims against the NYSP defendants proceed except the claims alleging malicious prosecution, failure to intervene in plaintiff's prosecution, and failure to intervene in plaintiff's arraignment on the part of the arresting officers in Brooklyn.

With respect to the ADAs, the magistrate judge recommended that the false arrest, malicious prosecution, and related failure to intervene claims be dismissed. The magistrate judge recommended that the failure to arraign and related failure to intervene claims proceed against the ADAs. In so doing, the magistrate judge ruled that the ADAs were not entitled to absolute immunity for their roles in the events underlying Ogunkoya's failure to arraign claims.

In addition, the magistrate judge recommended that all claims against DA Doorley be dismissed because she lacked personal involvement or had absolute immunity.

7

Finally, the magistrate judge recommended that the municipal liability claim against Monroe County also proceed because Ogunkoya had plausibly pled a *Monell* violation requiring the resolution of factual questions.

The district judge adopted the R&R. This appeal followed.

III.

Absolute immunity bars § 1983 suits against prosecutors for their role "in initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Instead of relying on strict categories of actions with respect to which absolute immunity attaches, the relevant question is "whether there is pending or in preparation a court proceeding in which the prosecutor acts as an advocate." *Warney*, 587 F.3d at 123. Ultimately, we ask "whether a reasonable prosecutor would view the acts challenged by the complaint as reasonably within the functions of a prosecutor." *Giraldo v. Kessler*, 694 F.3d 161, 166 (2d Cir. 2012).

The ADAs' decision to prosecute Ogunkoya and proceed by grand jury indictment rather than proceed on separate criminal complaints is a prosecutorial exercise of discretion entitled to absolute immunity. *See Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler*, 424 U.S. at 430–31) (holding that "[p]rosecutors are absolutely immune . . . for their conduct in 'initiating a prosecution'"). What we must decide is whether the ADAs are entitled to absolute immunity when they directed the NYSP not to have

8

Ogunkoya arraigned in the Greece and Irondequoit town courts and informed those courts that Ogunkoya would not be arraigned.

In our view, the Supreme Court's pronouncement in *Imbler* squarely addresses the conduct of the ADAs at issue here. 424 U.S. at 430–31. The Court noted:

> We recognize that the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom. A prosecuting attorney is required constantly, in the course of his duty as such, to make decisions on a wide variety of sensitive issues. These include questions of whether to present a case to a grand jury, whether to file an information, [and] whether and when to prosecute. . . .

*Id.* at 431 n.33.

The District Court erred in denying the ADAs absolute immunity. The District Court found that "'a reasonable prosecutor' would conclude that the Greece and Irondequoit arraignments were a police, not a prosecutorial, responsibility." J. App. 113. We disagree. It is true that, in New York, the responsibility for presenting a detained person before a court for evaluation of the legality of his or her detention is generally a police responsibility. *See* N.Y. Crim. Proc. Law § 140.20(1) (McKinney) ("Upon arresting a person without a warrant, *a police officer* . . . must . . . without unnecessary delay bring the arrested person or cause him to be brought before a local criminal court and file therewith an appropriate accusatory instrument charging him with the offense or offenses in question.") (emphasis added). When a police officer arrests a person without a warrant, the officer is constitutionally obliged to present the arrestee before a judicial

9

officer for a determination of probable cause. *See Gerstein v. Pugh*, 420 U.S. 103, 113-14 (1975). That is necessarily an obligation imposed on the officer, who has custody of the arrested person, to prevent an extended unauthorized detention. However, whether a prosecutor is performing a police function or acting as an advocate on behalf of the state with regard to a detained individual "depends in part on whether one looks at the prosecutors' discrete actions, or at their role and function in an ongoing proceeding." *Warney*, 587 F.3d at 123. We take the second approach, determining the prosecutor's immunity "chiefly on whether there is pending or in preparation a court proceeding in which the prosecutor acts as an advocate." *Id.* Viewed in the context of Ogunkoya's pending indictment and prosecution on multiple charges, a reasonable prosecutor would conclude that the ADAs' function in controlling Ogunkoya's arraignments on multiple different charges that would later be subsumed in a single charging document was part of a prosecutor's role as the gatekeeper of "whether and when to prosecute." *Imbler*, 424 U.S. at 431 n.33.

The analysis this Court undertook in *Warney* is helpful to our analysis here. In *Warney*, we recognized that prosecutors who are alleged to have not timely disclosed exculpatory DNA evidence obtained during habeas proceedings are entitled to absolute immunity. *Id.* at 115–21, 125. We concluded that classifying the steps that the prosecutors took—testing and delaying disclosure of DNA evidence, and identifying the real killer—was impossible "with[out] reference to context." *Id.* at 123. Inculpatory results would

10

aid advocacy; exculpatory results could give rise to an administrative burden to effect disclosure; results inculpating another would support initiation of a new investigation. We held that regardless of the test results, all the steps that the *Warney* prosecutors took "were integral to and subsumed in the advocacy functions being performed in connection with Warney's post-conviction initiatives." *Id.*

Our decision in *Warney* follows the Supreme Court's instruction in *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009), that absolute immunity covers administrative acts "directly connected with the conduct of a trial." The Court explained:

> [U]nlike with other claims related to administrative decisions, an individual prosecutor's error in the plaintiff's specific criminal trial constitutes an essential element of the plaintiff's claim. The administrative obligations at issue here are thus unlike administrative duties concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities, and the like. Moreover, the types of activities on which Goldstein's claims focus necessarily require legal knowledge and the exercise of related discretion, e.g., in determining what information should be included in the training or the supervision or the information-system management. And in that sense also Goldstein's claims are unlike claims of, say, unlawful discrimination in hiring employees. Given these features of the case before us, we believe absolute immunity must follow.

*Id.* In *Warney*, "[j]ust as the administrative act in *Goldstein* was integral to an advocacy function," the potentially administrative or investigative acts "were also integral to the overarching advocacy function." 587 F.3d at 124.

Here, the ADAs' direction that Ogunkoya not be arraigned in Greece and Irondequoit cannot be understood without reference to their decision to proceed by grand jury indictment on the three sets of charges together. Viewed as a set of discrete

11

acts, the ADAs' interference in Ogunkoya's arraignments in Greece and Irondequoit ostensibly hampered a police administrative function—presentation of the defendant as the last stage of the police's investigation and arrest. *See*, *e.g.*, *Simon v. City of New York*, 727 F.3d 167, 172 (2d Cir. 2013) ("Investigation, arrest, and detention have historically and by precedent been regarded as the work of police, not prosecutors."). But that is not the lens through which to examine the prosecutor's actions. Rather, we view what occurred as the ADAs directing the NYSP on how to proceed with respect to a court proceeding pending or in preparation "in which the prosecutor [is acting] as an advocate." *Warney*, 587 F.3d at 123.

The decision to initiate prosecution, what charges to bring, and how to perfect and consolidate those charges is a quintessential prosecutorial function. *See Imbler*, 424 U.S. at 431; *Ying Jing Gan v. City of New York*, 996 F.2d 522, 530 (2d Cir. 1993) ("A prosecutor . . . has absolute immunity in connection with the decision whether or not to commence a prosecution."). The ADAs were not only participating in Ogunkoya's arraignment on the Henrietta charges but preparing to prosecute him on what they were informed were multiple charges in two other towns as well. Exercising their "related discretion," the ADAs decided to initiate prosecution of Ogunkoya in the two other towns, and ultimately to pursue all three sets of charges, by grand jury indictment rather than have three separate criminal actions proceed under the six felony complaints. *Goldstein*, 555 U.S. at

12

344. The ADAs directed that Ogunkoya's arraignment in Greece and Henrietta not occur in order to control how the state's criminal case would proceed.

So, while the District Court was correct that in New York state arraignment is generally a police function, its analysis failed to consider that a court proceeding was in preparation, *Warney*, 587 F.3d at 123, and that the ADAs' participation in the act of scheduling arraignments on the multiple charges that were to be consolidated in a single indictment was "directly connected with the conduct of a trial" and "require[d] legal knowledge and the exercise of related discretion." *Goldstein*, 555 U.S. at 344. As the ADA explained in his email to Ogunkoya's counsel, Ogunkoya had already been arraigned on the Henrietta charges and was being detained on that basis. Further arraignments on the Greece and Irondequoit charges were not necessary for him to continue to be held pursuant to the Henrietta arraignment and on terms set by the Henrietta court.[2] As their

[2] Ogunkoya complains about ADA Egan's argument to the Henrietta court that bail on the Henrietta charge should be set at a rate that reflected the pendency of the Greece and Irondequoit felony complaints, on which he had not been arraigned, in addition to the Henrietta complaints. He further asserts that the bail bondsman did not want to post bail "because of the possibility that as soon as he was released [he] would be arrested on the four counts on which he had not [been] arraigned." J. App. 13. He cites documents not in the record assertedly showing that he "was arrested on the Greece charges as well as the Henrietta charges." On this basis, he argues that the ADAs and the other New York state defendants violated his constitutional rights by failing to "intervene and prevent his extended detention." J. App. 17. Although the sequence of events is regrettable, these facts do not alter our analysis regarding the prosecutors' entitlement to absolute immunity in light of their exercise of prosecutorial functions in determining to arraign Ogunkoya only on the Henrietta charge, and to await a grand jury's indictment on the charges pertaining to events in all three towns.

13

role with respect to the arraignments was prosecutorial, the ADAs are thus entitled to absolute immunity.

Nor does our decision in *Simon*, on which the District Court relied, mandate a different result. 727 F.3d 167. In *Simon*, we held that a prosecutor who used a material witness warrant to detain a witness for questioning, instead of allowing officers to fulfill the warrant by bringing the witness before the court, was not entitled to absolute immunity. *Id.* at 169–70. We reasoned that arrest and detention are historically police functions and that New York law explicitly entrusts the execution of material witness warrants to police officers. *Id.* at 172–73.

Simon was not detained for a trial, but merely held in the course of a criminal investigation, for which no judicial proceedings were scheduled. *Simon*, 727 F.3d at 169, 174. The prosecutor's acts were not "subsumed [with]in the advocacy function" related to a pending court proceeding in the nature of a criminal prosecution. *Warney*, 587 F.3d at 123. We noted as much at the time. *Simon*, 727 F.3d at 174 (explaining, "[t]hat Simon might eventually have been called to testify in a judicial proceeding does not make her detention a prosecutorial function") (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 275–76 (1993)). It was clear, given the context and timing of the *Simon* prosecutor's acts in question, that the prosecutor was involved in an investigation, not in advocacy related to the initiation and prosecution of criminal charges. *Id.* Indeed, as we pointed out there, the prosecutor in *Simon* was "actively avoiding the court-ordered material witness

14

hearing"; his acts ensured that the plaintiff "had no way of contesting her detention." *Id.* at 173. In this case, in contrast, it is immaterial that the ADAs may have interfered with a police function because the overarching reason for their directing the arraignments in town courts to not occur was not related to Ogunkoya's warrantless arrest, but rather constituted an exercise of their prosecutorial discretion in preparing a case for indictment and deciding when, where, and how to prosecute. The separation of the two functions is highlighted further by the observation that once his bond documents for the Henrietta charge alone were signed, he was released, despite his still not having been arraigned on the Greece and Irondequoit charges. For these reasons, we hold that the ADAs have absolute immunity and the claims against them must be dismissed.

IV.

Monroe County appeals from the District Court's denial of its motion to dismiss Ogunkoya's *Monell* municipal liability and failure-to-train claims. Although the order denying absolute immunity is "immediately appealable under the collateral order doctrine," *Shmueli*, 424 F.3d at 236, pendent appellate jurisdiction is only appropriate where an issue is "inextricably intertwined" with the other issues on appeal giving rise to the appellate court's jurisdiction or is necessary to ensure "meaningful review" of those issues. *Warney*, 587 F.3d at 126 (internal quotation marks omitted). Our decision here is guided, if not mandated, by the previous decision of this Court in *Warney*. There we held:

> Unlike the order denying immunity, the order denying Monroe County's motion to dismiss is not immediately appealable pursuant to the collateral

15

order doctrine. . . . The elements of a *Monell* claim, and the extent to which prosecutors in New York are agents of the state (as opposed to a county) are not inextricably intertwined with the question of absolute immunity. We therefore decline to exercise pendent appellate jurisdiction over these issues at this time.

*Id.*; *cf. Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) (holding that an arresting officer's liability is irrelevant to liability of municipality). For these same reasons we hold that the County's appeal is premature and one over which we lack appellate jurisdiction.

V.

For the foregoing reasons, the order of the District Court insofar as it denied absolute immunity to the ADAs is reversed, and this case is remanded for further proceedings consistent with this opinion.[3] The appeal filed by Monroe County is dismissed.

---

[3] Ogunkoya's lawsuit against the remaining defendants will proceed in the District Court. We express no views as to the merits of those claims.