17-594-cv
*Giuseppe D'Alessandro v. City of New York, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of October, two thousand seventeen.

Present:
> DEBRA ANN LIVINGSTON,
> GERARD E. LYNCH
> DENNY CHIN,
> *Circuit Judges*,

_____

GIUSEPPE D'ALESSANDRO,

*Plaintiff-Appellant*,

v.                                                                      17-594-cv

CITY OF NEW YORK, BRENDA MORRIS, individually and in her official capacity as an employee of the City of New York who is, was an Assistant District Attorney and or employee of the Office of the District Attorney, County of New York, JOHN DOES, 1–5 individually and in their official capacities as employees of the City of New York who are, were Assistant District Attorneys, ROBERT M. MORGENTHAU, ESQ., individually and in his official capacity as the former District Attorney for the County of New York, ANTHONY VAZQUEZ, individually and in his official capacity employee of the City of New York who is/was a Police Officer employed by the New York City Police Department,

*Defendants-Appellees*,

1

CYRUS R. VANCE, JR., individually and in his official capacity as the District Attorney for the County of New York, MICHAEL CASTIGIA, JOHN DOES 6–10, individually and in their official capacities of the City of New York who are, were Police Officers employed by the New York City Police Department,

*Defendants*.

---

| For Plaintiff-Appellant: | BRIAN L. GARDNER, Cole Schotz P.C., New York, NY. |
| --- | --- |
| For Defendants-Appellees: | PATRICIA J. BAILEY, Assistant District Attorney, for Cyrus R. Vance, Jr., District Attorney of New York County, New York, NY. |
| | AARON M. BLOOM (Susan P. Greenberg, *on the brief*) for Zachary W. Carter, Corporation Counsel of the City of New York, New York, NY. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Townes, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Giuseppe D'Alessandro ("D'Alessandro") appeals from the January 30, 2017 judgment of the United States District Court for the Eastern District of New York (Townes, *J.*), granting motions to dismiss by defendants Robert Morgenthau ("Morgenthau"), Brenda Morris ("Morris"), Anthony Vazquez ("Vazquez"), and the City of New York ("the City"). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We give *de novo* review to a district court's dismissal of a complaint for failure to state a claim. *Pruter v. Local 210's Pension Tr. Fund*, 858 F.3d 753, 759 (2d Cir. 2017). In conducting this review, we assume all of the complaint's factual allegations to be true, and "draw[] all

2

reasonable inferences in [the plaintiff's] favor." *Id.* (quoting *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 137 (2d Cir. 2013)). However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "[B]are assertions" that "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" violation "are conclusory and not entitled to be assumed true." *Id.* at 681 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). We can affirm the district court's order "on any ground" that the record supports. *Lee v. Kemna*, 534 U.S. 362, 391 (2002).

### A. Background

In 1989, D'Alessandro suspected that his employee, Jaime Abril ("Abril"), had stolen $3,000 from his restaurant. D'Alessandro allegedly responded by coercing Abril into the restaurant's basement and confining him there for over twelve hours. (D'Alessandro denies ever confining Abril.) Abril later filed a criminal complaint with the New York City Police Department ("NYPD"). Vazquez and five unnamed NYPD officers ("John Does 6–10") investigated the incident and arrested D'Alessandro on charges of kidnapping and related offenses.

The New York County District Attorney's Office—headed, at the time, by Morgenthau—commenced prosecution of D'Alessandro. Then-Assistant District Attorney ("ADA") Morris presented D'Alessandro's case to a grand jury in October 1989. D'Alessandro insists that the grand jury never returned a signed indictment, and that Morris proceeded with the prosecution regardless.[1] D'Alessandro also alleges that Morris: (1) engaged in a "police-type investigation" into his case in order to increase the severity of the charges against him in

---

[1] To be sure, a copy of the grand jury's indictment—dated November 3, 1989—exists in the record. *See* J.A. 55. But the indictment does not contain the jury foreman's signature. Instead, it contains a notation from the Clerk of the Supreme Court that the original cover page of the indictment is missing.

retaliation for his having declined her initial plea offer, First Amended Complaint ("FAC") ¶ 47; (2) improperly acquired evidence, manufactured evidence, facilitated false witness statements, and hid contrary exculpatory evidence during this investigation; (3) obtained a superseding indictment from a grand jury for the charge of kidnapping in the *first* degree based on this faulty investigation[2]; (4) engaged in an unjustified 196-day delay in producing the grand jury minutes in response to D'Alessandro's CPL § 210.30 motion; and (5) failed to alert the court to precedent that was dispositive and directly contrary to her position.

On June 25, 1991, a jury found D'Alessandro guilty of kidnapping in the first degree. He was later sentenced to a minimum of fifteen years in prison. On June 29, 2010, the First Department granted D'Alessandro a *writ of error coram nobis*, concluding that his counsel was ineffective for failing to raise a "clear-cut and completely dispositive speedy trial argument" on the direct appeal of his conviction. FAC ¶ 21. The court vacated D'Alessandro's conviction, and dismissed his indictment.

D'Alessandro filed the instant 42 U.S.C. § 1983 lawsuit in the Eastern District of New York on February 21, 2013, naming the following individuals as defendants: (1) Morris, in both her personal and official capacities; (2) Morgenthau, in both his personal and official capacities; (3) Cyrus M. Vance, Jr., the current District Attorney for the County of New York, in both his individual and personal capacities; (4) the City of New York; (5) Vazquez, in both his personal and official capacities; (6) five unnamed members of the District Attorney's Office ("John Does 1–5"); and (7) five unnamed NYPD Officers ("John Does 6–10"). The complaint asserts that Morris's alleged misconduct, outlined above, deprived D'Alessandro of his Fourteenth

---

[2] The original indictment charged kidnapping in the second degree, which carries a minimum sentence of five years. Kidnapping in the first degree carries a mandatory minimum sentence of fifteen years.

Amendment Due Process rights. It also alleges that Vance,[3] Morgenthau, John Does 1–5, and the City negligently hired Morris, failed to properly supervise Morris, and failed to train Morris in her legal duties. Finally, the complaint alleges that Vazquez and John Does 6–10 "failed to conduct a constitutionally adequate criminal investigation," FAC ¶ 54, that all defendants failed to intervene to prevent the violation of D'Alessandro's constitutional rights, and that the City was negligent in hiring, retaining, and supervising Vazquez and John Does 6–10.[4]

The District Attorney's Office—on behalf of Morgenthau and Morris—filed a Rule 12(b)(6) motion to dismiss D'Alessandro's complaint for failure to state a claim. The City of New York—on behalf of itself and Vazquez—also filed a Rule 12(b)(6) motion to dismiss.[5] On November 22, 2016, the district court granted both motions. First, the district court held that absolute prosecutorial immunity bars D'Alessandro's claims against Morris and Morgenthau in their personal capacities. Second, the district court concluded that the Eleventh Amendment bars any claims against Morris and Morgenthau in their official capacities insofar as they were acting in their prosecutorial roles on behalf of the State, and that the remaining official capacity claims should be analyzed as claims against the City of New York. Third, the district court interpreted D'Alessandro's claim against Vazquez to be a claim for false arrest, and dismissed that claim because Vazquez acted with probable cause. Finally, the district court dismissed D'Alessandro's claims against the City of New York, since D'Alessandro failed to allege that the City engaged in a "municipal policy or practice," per *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

---

[3] D'Alessandro later voluntarily dismissed his claims against Vance.

[4] D'Alessandro makes no reference on appeal to the dismissal of his negligent hiring and failure to intervene claims, and we accordingly deem them abandoned.

[5] The ten "John Doe" defendants have yet to be identified or served.

On appeal, D'Alessandro argues that the district court erred in all four of these findings. We disagree.

## B. Claims Against Morris and Morgenthau in Their Personal Capacities

At the start, the district court correctly concluded that absolute prosecutorial immunity shields Morris and Morgenthau from suit in their personal capacities. Prosecutors receive absolute immunity from suit under § 1983 when they engage in "advocatory conduct that is 'intimately associated with the judicial phase of the criminal process.'" *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). To determine if a prosecutor's actions meet this standard, we use a "functional approach." *Id.* (quoting *Hill v. City of New York*, 45 F.3d 653, 660 (2d Cir. 1995)). Simply put, a prosecutor is not absolutely immune solely because she engaged in the conduct in question during her line of work. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). A prosecutor wears many hats. *See Hill*, 45 F.3d at 656. She can act as an "administrat[or]," "investigator," or "advocate[]." *Id.* But she only receives absolute immunity when she acts as an "advocate." *See Warney v. Monroe Cty.*, 587 F.3d 113, 121 (2d Cir. 2009).[6]

Under our case law, a prosecutor unquestionably acts as an advocate—and therefore receives absolute immunity—when she initiates and pursues a criminal prosecution. *See Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005). That is, she enjoys absolute immunity for acts she undertakes "in preparing for the initiation of judicial proceedings or for trial," *id.* at 237 (quoting *Buckley*, 509 U.S. at 273), that are "within the scope of [her] prosecutorial duties," *id.*

---

[6] Importantly, this "functional" test is an objective one. *Giraldo*, 694 F.3d at 165 (citing *Hill*, 45 F.3d at 662). We ask only whether the *conduct* in question could "reasonably" fall under the rubric of the prosecutor's function as an advocate. *See id.* at 166. If it does, then absolute immunity attaches even if the prosecutor engaged in those actions with vindictive or malicious intent. *Id.*

(quoting *Imbler*, 424 U.S. at 420). To be sure, a prosecutor is not protected when she "acts without any colorable claim of authority," and thus "proceeds in the clear absence of all jurisdiction." *Id.* (quoting *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987)). However, a prosecutor still acts within the scope of her duties even if she makes false statements during judicial proceedings, *see Burns v. Reed*, 500 U.S. 478, 490 (1991), knowingly uses false testimony, *Shmueli*, 424 F.3d at 237, deliberately withholds exculpatory evidence, *id.*, engages in malicious prosecution, *id.* at 238, or attempts to intimidate an individual into accepting a guilty plea, *Peay v. Ajello*, 470 F.3d 65, 67–68 (2d Cir. 2006).

### 1. Claims Against Morris

We address D'Alessandro's claims against Morris first. Morris undertook all of the actions that D'Alessandro alleges (such as failing to acquire a signed indictment, hiding exculpatory evidence, manufacturing evidence, charging D'Alessandro with an aggravated crime for retributive purposes, and delaying production of the grand jury minutes) while she was preparing D'Alessandro's case for trial. Objectively, all of her supposed wrongs occurred while she engaged in acts "intimately associated with the judicial phase of the criminal process." *Giraldo*, 694 F.3d at 165 (quoting *Imbler*, 424 U.S. at 430). Absolute immunity therefore protects her from suit.

D'Alessandro makes three arguments for why his claims against Morris should not be dismissed, none of which is persuasive. First, D'Alessandro claims that Morris never obtained a properly signed indictment from the grand jury for the initial charge of kidnapping in the second degree. He points out that, under New York law, "[a] valid and sufficient accusatory instrument is a nonwaivable jurisdictional prerequisite to a criminal prosecution." *People v. Dreyden*, 15 N.Y.3d 100, 103 (2010) (quoting *People v. Case*, 42 N.Y.2d 98, 99 (1977)). Thus, he argues, Morris acted "in the clear absence of all jurisdiction" when she later investigated and prosecuted him, *see*

7

*Shmueli*, 424 F.3d at 237 (quoting *Barr*, 810 F.2d at 361), so that she is not entitled to absolute immunity.

We disagree. To the extent that D'Alessandro alleges that the initial indictment was jurisdictionally defective simply because it lacked a signature, *see, e.g.*, Br. for Pl.-Appellant at 30 ("The original indictment was not signed, and is therefore invalid . . . ."), we note that Morris has absolute immunity even if she acted with a mere "*colorable* claim of authority." *Shmueli*, 424 F.3d at 237 (quoting *Barr*, 810 F.2d at 361) (emphasis added). In New York, "even where a defendant has pointed to an irregularity in [an] accusatory instrument, . . . not every deficiency implicates the jurisdiction of the court." *People v. Konieczny*, 2 N.Y.3d 569, 575 (2004). Multiple New York courts have stated that an indictment that lacks a signature is not necessarily jurisdictionally defective. *See, e.g.*, *People v. Brown*, 17 A.D.3d 869, 870 (N.Y. App. Div. 2005); *People v. Stauber*, 307 A.D.2d 544, 545 (N.Y. App. Div. 2003); *People v. Villegas*, 46 Misc. 3d 232, 234 (N.Y. Sup. Ct. 2014) ("[T]he lack of a signature on the indictment cannot be raised for the first time on appeal because it is not a jurisdictional requirement."); *see also People v. Iannone*, 45 N.Y.2d 589, 600 (1978) ("[A]n indictment is jurisdictionally defective only if it does not effectively charge the defendant with the commission of a particular crime."). We thus need not address whether D'Alessandro's initial indictment was jurisdictionally sufficient, because there is at least a "colorable" claim that it was. *See Shmueli*, 424 F.3d at 237. That is enough to defeat D'Alessandro's argument that Morris does not enjoy absolute immunity.

To be clear, D'Alessandro periodically suggests in his briefing before this Court that the indictment not only lacked a signature, but that the original grand jury never voted a true bill against him, so that the indictment in the record is a fake. *See, e.g.*, Br. for Pl.-Appellant at 49 ("Morris originally prosecuted Appellant absent an indictment."). To the extent his argument

against absolute immunity rests on this claim, however, the complaint was properly dismissed because the claim is devoid of factual support and was thus inadequately pled. *See Twombly*, 550 U.S. at 556. To survive a Rule 12(b)(6) motion to dismiss, a complaint must provide "enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegality. *Id.* D'Alessandro's complaint contains mere conclusory allegations of fraud, *see, e.g.*, FAC ¶ 14 ("Upon information and belief, a signed copy of the indictment was never filed with the court . . . ."); FAC ¶ 23 ("Upon information and belief, Defendant Morris never obtained a signed indictment until the superseding indictment, and thus proceeded with a wholly unauthorized initial prosecution."), none of which we accept as true. *See Iqbal*, 556 U.S. at 679; *see also United States v. Leung*, 40 F.3d 577, 581 (2d Cir. 1994) (noting that we attach "a presumption of regularity . . . to grand jury proceedings").[7] D'Alessandro has thus not sufficiently "nudged [his] claims" of fraud or forgery—to the extent that he makes them—"across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

D'Alessandro next argues that his claim against Morris should not be dismissed on the grounds of absolute prosecutorial immunity because Morris's failure to turn over the grand jury minutes in response to his CPL § 210.30 motion was "administrative" rather than prosecutorial, and is therefore not shielded by immunity. Our case law forecloses this argument. "[A] prosecutor enjoys absolute immunity even when doing an administrative act if the act is done in the performance of an advocacy function." *Warney*, 587 F.3d at 124. Thus, even when a prosecutor is legally required to turn over evidence to opposing counsel, she still retains her absolute immunity

---

[7] Indeed, a prior district court ruling on D'Alessandro's habeas petition rejected similar arguments that the initial indictment was actually defective and that the superseding indictment was procured by fraud because both arguments were "based on speculation." *D'Alessandro v. Fischer*, No. 01 CIV. 2551 LTS/DF, 2005 WL 3159674, at *12 (S.D.N.Y. Nov. 28, 2005).

9

for failing to provide that evidence. *See id.* at 124–25; *Hill,* 45 F.3d at 662. And even seemingly administrative duties that "necessarily require legal knowledge and the exercise of related discretion" are shielded by absolute immunity. *Warney*, 587 F.3d at 124 (quoting *Van de Kamp v. Goldstein*, 555 U.S. 355, 344 (2009)). Here, although the trial court did direct Morris to produce the grand jury minutes, she neglected to do so while engaging in her role as a prosecutor. Her act was "intimately associated with the judicial phase of the criminal process," *Giraldo*, 694 F.3d at 165 (quoting *Imbler*, 424 U.S. at 430), and necessarily required an understanding of her exact obligations under CPL § 210.30. She is therefore shielded by absolute immunity.

D'Alessandro finally argues that Morris's supposedly malicious investigation into his case was an "investigative activit[y] outside of traditional prosecutorial conduct," and thus outside the aegis of her absolute immunity. Br. for Pl.-Appellant at 35. It is true that "actions [that a prosecutor] take[s] as an investigator enjoy only qualified immunity." *Zahrey v. Coffey*, 221 F.3d 342, 346 (2d Cir. 2000). However, "not every interview, interrogation, or other act by a prosecutor with the potential of revealing new information is an investigative act." *Giraldo*, 694 F.3d at 166. Specifically, if a prosecutor evaluates evidence and interviews witnesses for the purpose of being an "effective advocate of a case already assembled," rather than investigating for the purpose of helping the police identify a suspect and make an arrest, then her conduct is protected by absolute immunity. *Id.* (quoting *Smith v. Garretto,* 147 F.3d 91, 94 (2d Cir. 1998)). Here, D'Alessandro alleges that Morris undertook her investigation after the grand jury had assembled and, indeed, after an indictment had been returned.[8] He asserts no facts suggesting that this investigation was not undertaken "in preparing for the initiation of judicial proceedings or for trial." *Smith*, 147 F.3d

---

[8] As stated above, we do not accept as true D'Alessandro's conclusory allegation that the indictment in the record is a forgery.

at 94 (quoting *Buckley*, 509 U.S. at 273). The district court thus properly concluded, based on the complaint's allegations, that Morris's investigation was "reasonably related to [a] decision[] whether or not to begin or to carry on a particular criminal prosecution, or to defend a conviction," *Giraldo*, 694 F.3d at 166. She is therefore absolutely immune from suit.

### 2. Claims Against Morgenthau

We next address D'Alessandro's claims against Morgenthau in his personal capacity. To the extent that D'Alessandro asserts the same claims against Morgenthau as against Morris (*i.e.*, malicious prosecution, failure to turn over the grand jury minutes, attempting to cudgel him into accepting a plea deal, etc.), we treat those claims as barred by absolute prosecutorial immunity, for the same reasons as with Morris. And to the extent that D'Alessandro alleges that Morgenthau can be sued in his personal capacity for negligently failing to train and supervise Morris, Morgenthau is still shielded by absolute immunity. *See Van de Kamp*, 555 U.S. at 344. Accordingly, these claims were properly dismissed.

### C. Claims Against Morris and Morgenthau in Their Official Capacities

"The Eleventh Amendment generally bars suits against a state in federal court." *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 600 (2d Cir. 1999) (per curiam). It does not, however, bar suits against municipalities and local governments, such as the City of New York. *See Bd. of Trs.of Univ. of Ala. v. Garrett*, 531 U.S. 356, 368–69 (2001). When a defendant is sued in his official capacity, we treat the suit as one against the "entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell*, 436 U.S. at 690 n.55). Thus, if a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the State, and therefore immune from suit in her official capacity. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993); *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988). But if a suit

11

centers "on the administration of the district attorney's office"—that is, on the "office policy" that the district attorney sets—then the district attorney is "considered a municipal policymaker," and the Eleventh Amendment does not immunize him from suit. *Ying Jing Gan*, 996 F.2d at 536.

The district court correctly concluded that the Eleventh Amendment shields Morgenthau[9] and Morris from suit in their official capacities, to the extent that D'Alessandro attacks their prosecutorial decisions over the course of his case. To the extent that there are any official capacity claims against Morris or Morgenthau for actions taken administratively as municipal policymakers, the parties agree that those claims would be analyzed along with the other claims against the City, which we discuss below.

### D. Claims Against Vazquez

The district court interpreted D'Alessandro's § 1983 claim against Vazquez as one for false arrest. It dismissed the claim because it concluded that Vazquez had probable cause to arrest D'Alessandro. *See Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) ("Probable cause is a complete defense to a constitutional claim of false arrest."). On appeal, D'Alessandro asserts that the district court erred in dismissing the complaint on that basis. For the following reasons, we disagree.[10]

"Probable cause exists 'when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" *Lee v. Sandberg*, 136 F.3d 94, 102–

---

[9] Morgenthau no longer serves as the New York District Attorney; accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, his successor, Cyrus R. Vance, should be automatically substituted as a party in any claim brought against Morgenthau acting in that official capacity. Because there are no such viable claims, however, there is no need to make that substitution here.

[10] As a result, we need not determine if D'Alessandro's false arrest claim is time-barred—or if the City waived this argument on appeal.

12

03 (2d Cir. 1997) (quoting *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)). "[P]robable cause is a fluid concept," one that is "not readily, or even usefully, reduced to a neat set of legal rules." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002)). However, we have explained that probable cause exists if an officer was "advised of a crime by a person who claims to be the victim, and who has signed a complaint," and there are no "circumstances that raise doubts as to the victim's veracity." *Singer*, 63 F.3d at 119. Indeed, "[t]he veracity of citizen complaints who are the victims of the very crime they report to the police is assumed." *Lee*, 136 F.3d at 103 (quoting *Miloslavsky v. AES Eng'g Soc'y, Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992), *aff'd*, 993 F.2d 1534 (2d Cir. 1993)). Furthermore, an officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Coons v. Casabella*, 284 F.3d 437, 441 (2d Cir. 2002) (quoting *Cerrone v. Brown*, 246 F.3d 194, 203 (2d Cir. 2001)). An officer's "function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989).

D'Alessandro's complaint acknowledges that Abril filed a criminal complaint with the police after the alleged kidnapping. FAC ¶ 13. D'Alessandro cites two reasons why Vazquez should have distrusted Abril, neither of which is plausible. First, D'Alessandro insists that Vazquez should have doubted Abril's veracity because Abril and D'Alessandro were co-workers. But D'Alessandro cites no case from this Court to support that proposition. Indeed, the simple fact that Abril knew D'Alessandro before he filed his complaint does not, by itself, undermine Abril's trustworthiness. *See, e.g.*, *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (finding that the plaintiff "proffered no evidence to suggest that the officers had any reason to doubt [the] veracity" of his wife's criminal complaint against him); *see also Stansbury*

13

*v. Wertman*, 721 F.3d 84, 91 (2d Cir. 2013) ("[The officer] had no reason to doubt the honesty of [two witnesses], each of whom made statements under penalty of perjury and lacked incentive to single out [the plaintiff] as the perpetrator.").

Second, D'Alessandro insists that Vazquez ignored exculpatory evidence before arresting him. Specifically, D'Alessandro alleges that Vazquez arrested him despite the fact that two deliverymen claimed to not see Abril in the basement during the time period in question.[11] But "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997). D'Alessandro alleges no facts suggesting that Vazquez acted unreasonably in relying on Abril's complaint. Moreover, Vazquez was under no obligation to determine D'Alessandro's guilt conclusively before arresting him. *See Panetta*, 460 F.3d at 396. D'Alessandro's claim to the contrary is without merit. *See Krause*, 887 F.2d at 372 (noting that the judge and jury, not the arresting officer, are to "determine guilt through a weighing of the evidence").

### E. D'Alessandro's Claims Against the City of New York

Finally, D'Alessandro argues that the City and Morgenthau can be held liable pursuant to *Monell* for Morgenthau's alleged failure to properly train his subordinates in their constitutional duties. D'Alessandro acknowledges that *Monell* generally requires a plaintiff to establish a pattern or practice of similar constitutional violations. He insists, however, that his complaint sufficiently alleges such a pattern or practice—or, alternatively, that liability may attach here based on the "single incident" of his own case. As to both points, we disagree.

---

[11] Both deliverymen provided this testimony at D'Alessandro's trial, and the jury still found D'Alessandro guilty beyond a reasonable doubt. *See People v. D'Alessandro*, 184 A.D.2d 114, 117 (N.Y. App. Div. 1992).

14

The Supreme Court has emphasized that "[a] municipality's culpability for a deprivation of rights [under § 1983] is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To establish a "failure to train" claim, a plaintiff must generally demonstrate that there has been a "pattern of similar constitutional violations by untrained employees." *Id.* at 62. Only such a pattern may "ordinarily" be said to put the municipality on notice of its employees' constitutional violations. *See id.*

D'Alessandro's complaint does not sufficiently allege a pattern of similar constitutional violations by the District Attorney's Office. The complaint never mentions specific instances of prosecutorial misconduct beyond D'Alessandro's own case. Rather, the complaint merely insists—over and over again, in a conclusory fashion—that a pattern or custom of misconduct existed. *See, e.g.*, FAC ¶ 29 ("[T]he DA Defendants and the City maintained a policy, custom and/or practice of deliberate indifference to violations by their employees of the Constitutional rights of persons being investigated and prosecuted . . . ."); FAC ¶ 34 (similar); FAC ¶ 43 (similar); FAC ¶ 57 (similar); FAC ¶ 63 (similar). In such circumstances, where the complaint "fail[s] . . . to allege any facts to support [the] contention that the challenged actions were in any way related to a custom or policy promulgated by the New York County District Attorney's Office," *Ying Jing Gan*, 996 F.2d at 536, the pleading is insufficient. *See Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) ("[T]he mere assertion . . . that a municipality has . . . a custom or policy is insufficient in the absence of allegations of fact tending to support . . . such an inference." (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993))). We do not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Bldg.*

15

*Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 191 (2d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678–79 (2009)).[12]

To be sure, D'Alessandro correctly notes that "in a narrow range of circumstances," a plaintiff can establish a "failure to train" claim based on a single incident. *Connick*, 563 U.S. at 63 (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)). D'Alessandro's specific argument, however, is squarely foreclosed by *Connick*. The *Connick* Court explained that because prosecutors are subject to a rigorous "regime of legal training and professional responsibility," a municipality cannot be said to be on notice of a recurrent problem in a district attorney's office simply because a prosecutor erred in one case. *See id.* at 66–67. As a result, D'Alessandro cannot sustain a "failure to train" claim based on the "single incident" of Morris's actions.

\*    \*    \*

We have considered D'Alessandro's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[12] In his opposition to the defendants' motion to dismiss before the district court, D'Alessandro did cite approximately twenty-four cases that he claims support his allegation of a pattern of similar prosecutorial overreaches. But D'Alessandro mentions none of these cases in his complaint. We test the sufficiency of *a complaint* in response to a Rule 12(b)(6) motion to dismiss, *see Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, 847 F.3d 92, 94 (2d Cir. 2017), and "[a] party is not entitled to amend its complaint through statements made in motion papers," *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). Within D'Alessandro's complaint, there are only naked allegations and conclusory statements about a "pattern" of violations. Those statements alone are not sufficient.