23-770 (L)
*Staley v. Hotel 57 Services, LLC*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13ᵗʰ day of March, two thousand twenty-four.

Present:

> ROBERT D. SACK,
> WILLIAM J. NARDINI,
> MYRNA PÉREZ,
> *Circuit Judges*.

_____

SELENA STALEY, on behalf of themselves and all others similarly situated, VIVIAN HOLMES, on behalf of themselves and all others similarly situated, OLIVE IVEY, on behalf of themselves and all others similarly situated,

> *Plaintiffs-Appellees*,

v.                                                              23-770 (L), 23-771 (CON)

HOTEL 57 SERVICES, LLC, HOTEL 57, LLC, TY WARNER HOTELS & RESORTS LLC, H. TY WARNER, FSR INTERNATIONAL HOTEL INC., DBA Four Seasons Hotels and Resorts,

> *Defendants-Appellants*,

FOUR SEASONS HOTELS AND RESORTS,

> *Defendants*.

_____

1

For Plaintiffs-Appellees:

EVAN C. BRUSTEIN (Maya Risman, Risman & Risman, P.C., New York, NY, Brian L. Bromberg, Bromberg Law Office, P.C., Brooklyn, NY, *on the brief*), Brustein Law PLLC, New York, NY

For Defendants-Appellants Hotel 57 Services, LLC, Hotel 57, LLC, Ty Warner Hotels & Resorts LLC, and H. Ty Warner:

KATHRYN LUNDY (Marc B. Zimmerman, James J. Boland, Smith, Gambrell & Russell, LLP, Chicago, IL and New York, NY, *on the brief*), Venable LLP, New York, NY

For Defendant-Appellant FSR International Hotel Inc., DBA Four Seasons Hotels and Resorts:

PAUL ERIC WAGNER (John R. Hunt, *on the brief*), Stokes Wagner, ALC, Atlanta, GA and Ithaca, NY

Appeal from an order of the United States District Court for the Southern District of New York (Jed S. Rakoff, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **AFFIRMED IN PART** and the appeal is **DISMISSED IN PART**.

Defendants-Appellants Hotel 57 Services, LLC, Hotel 57, LLC, Ty Warner Hotels & Resorts LLC, H. Ty Warner, and FSR International Hotel Inc. d/b/a Four Seasons Hotels and Resorts ("FSR," and collectively with the other Defendants-Appellants, "Defendants") appeal from an order of the United States District Court for the Southern District of New York (Jed S. Rakoff, *District Judge*), entered on May 3, 2023, and supplemented on July 5, 2023, denying their motion to compel arbitration and denying without prejudice their motion to dismiss class claims. Plaintiffs-Appellees Selena Staley, Vivian Holmes, and Olive Ivey (collectively, "Plaintiffs") were employed at the Four Seasons Hotel New York, located at 57 East 57th Street, New York, New York (the "Hotel") when they were furloughed without pay for an indefinite period of time beginning in March 2020. To date, they have not been able to return to work. Each of the Plaintiffs

signed an employment agreement called the "EmPact Agreement." As relevant here, the EmPact Agreement provides for a dispute resolution process called "Complaint, Arbitration & Review for Employees," or "C.A.R.E." J. App'x at 115. If a dispute cannot be resolved internally, then it is referred to mediation/arbitration as follows:

> STEP 6: MEDIATION/ARBITRATION. If I am not satisfied with the General Manager's written decision in STEP 5, and the complaint is based on one of the following types of claims as defined by law:
>   a. employment discrimination;
>   b. harassment as it relates to my employment;
>   c. a wage or hour violation;
>   d. or termination of my employment from the Hotel (including "constructive discharge", but not a permanent layoff);
>   then I must submit my complaint to be heard by an independent mediator/arbitrator unless I have chosen to opt out of the mediation/arbitration provisions by following the opt-out procedure provided on page 61.

*Id.* The EmPact Agreement provides that the American Arbitration Association's ("AAA") "'National Rules for the Resolution of Employment Disputes' will be used in any mediation and/or arbitration proceeding." *Id.* at 116. In addition, the EmPact Agreement includes a "Waiver of Right to Go to Court" and a "Waiver of Right to Submit Claim as Part of Class or Collective Action." *Id.* at 116–17.

Lastly, the EmPact Agreement provides for "No-Fault Separation Pay" in certain circumstances:

> If I receive a permanent layoff with no right of recall or I am terminated for no fault, my termination will be considered "no-fault." I understand that I may not seek mediation or arbitration of a permanent lay-off or "no-fault" termination under Step 6 of C.A.R.E. However, in the event of a permanent layoff or "no-fault" termination, I will be eligible for separation pay in accordance with the "No-Fault Separation Pay Schedule" in effect at the time of my separation unless I have opted out by signing the "Opt-Out Verification" attached to my EmPact.

*Id.* at 117.

3

On August 9, 2022, Plaintiffs brought suit against Defendants on behalf of themselves and all others similar situated, asserting claims under the federal and New York Worker Adjustment and Retraining Notification ("WARN") Acts, and for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel. Defendants moved to compel arbitration, dismiss class claims, and stay the action. The district court did not stay the action, and discovery was completed on May 1, 2023. On May 3, 2023, the district court entered an order denying the motion to compel arbitration and denying the motion to dismiss class claims, which the district court supplemented with an opinion on July 5, 2023. Defendants then filed this interlocutory appeal pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16(a)(1)(B). We assume the parties' familiarity with the case.

## I. Motion to Compel Arbitration

"We review *de novo* the denial of a motion to compel arbitration, and the issue of whether arbitrability is for the court or for the arbitrator." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 316 (2d Cir. 2021).[1] "In deciding motions to compel, courts apply a standard similar to that applicable for a motion for summary judgment." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). "The summary judgment standard requires a court to consider all relevant, admissible evidence submitted by the parties," "draw[ing] all reasonable inferences in favor of the non-moving party." *Id.* Further, "in determining whether the parties agreed to arbitrate[,] we look to general state law contract principles for guidance." *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 58 (2d Cir. 2001). Here, we rely on New York state law because "[t]he parties' briefs assume that [New York] state law governs this case, and such implied consent is sufficient to

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alteration marks, footnotes, and citations.

establish the applicable choice of law." *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017).

### A.  Who Should Determine Arbitrability

Defendants first argue that the question of whether Plaintiffs' claims must be arbitrated under the EmPact Agreement should have been decided by an arbitrator, not the district court. "We have recognized . . . that threshold questions of arbitrability, such as whether the arbitration agreement applies to a particular dispute, presumptively should be resolved by the court and not referred to the arbitrator." *DDK Hotels*, 6 F.4th at 317.  But it is well established that "[j]ust as the parties may elect through their contract to have arbitrators (rather than a court) resolve categories of disputes between them, they may similarly contract to have arbitrators (rather than a court) decide whether a particular dispute is to be arbitrated under the terms of the contract." *Id.* at 316; *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *DDK Hotels*, 6 F.4th at 317.

Defendants argue that the EmPact Agreement's incorporation of the AAA's rules serves as "clear and unmistakable evidence" of the parties' intent to have an arbitrator determine any threshold questions of arbitrability because Rule 6 provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."  FSR Br. at 14 (quoting AAA Employment Arbitration Rule 6(a)).  We disagree.  Incorporation of the AAA's rules can serve as clear and unmistakable evidence of the parties' intent to delegate questions of arbitrability to an arbitrator when it is coupled with an arbitration provision that "is broad and expresses the intent to arbitrate all aspects of all disputes." *DDK Hotels*, 6 F.4th at 318–19.  "Where, by contrast, the arbitration

agreement is narrower, vague, or contains exclusionary language suggesting that the parties consented to arbitrate only a limited subset of disputes, incorporation of rules that empower an arbitrator to decide issues of arbitrability, standing alone, does not suffice to establish the requisite clear and unmistakable inference of intent to arbitrate arbitrability." *Id.* at 319.

The EmPact Agreement fits within the latter situation: it does not "express[] the intent to arbitrate all aspects of all disputes" and instead "is narrower, vague, or contains exclusionary language." *Id.* at 318–19. Specifically, the arbitration provision governs only "one of the following [four] types of claims," and then further carves out disputes regarding "a permanent layoff" from one of those categories. J. App'x at 115; *cf. Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (finding that the parties contracted to have an arbitrator decide issues of arbitrability where the arbitration clause covered "any controversy arising with respect to" the contract and incorporated rules permitting the arbitrator to rule on arbitrability); *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120, 124–25 (2d Cir. 2003) (similar). Given the limited nature of the arbitration provision in the EmPact Agreement, the incorporation of the AAA's rules, standing alone, does not provide clear and unmistakable evidence of the parties' intent to arbitrate threshold questions of arbitrability. *Accord DDK Hotels*, 6 F.4th at 320–21; *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 195 (2d Cir. 2019); *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031–32 (2d Cir. 2014). Therefore, with the presumption in favor of having a court decide threshold questions of arbitrability and no clear and unmistakable evidence to the contrary, it was proper for the district court, and not an arbitrator, to determine whether Plaintiffs' claims are governed by the arbitration provision in the EmPact Agreement.

**B. Scope of the Arbitration Provision**

Defendants next argue that the district court erred in finding that Plaintiffs' claims are not subject to the arbitration provision in the EmPact Agreement. In resolving a motion to compel arbitration, "[o]ur inquiry is two-fold: whether the parties agreed to arbitrate, and, if so, whether the scope of that agreement encompasses the asserted claims." *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 249 (2d Cir. 1991). Here, the parties do not dispute that there is a valid and enforceable arbitration agreement. Therefore, the only question is whether the arbitration agreement at issue, that is, the EmPact Agreement, covers Plaintiffs' asserted claims. "We will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *New York v. Oneida Indian Nation of N.Y.*, 90 F.3d 58, 61 (2d Cir. 1996). "Doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

The EmPact Agreement provides that an employee must "submit [her] complaint to be heard by an independent mediator/arbitrator" if the complaint is based on certain types of claims "as defined by law," including "termination of [her] employment from the Hotel (including 'constructive discharge', but not a permanent layoff)." J. App'x at 115. In other words, according to the plain language of the arbitration provision, a claim regarding a permanent layoff is not subject to arbitration. *See Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002) ("[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms."). Furthermore, not only does the arbitration provision exempt an employee bringing a claim regarding a permanent layoff from arbitration, but the section titled "No-Fault Separation Pay" provides that an employee "*may not* seek . . . arbitration of a permanent lay-off." J. App'x at 117 (emphasis added).

7

Given that claims regarding a permanent layoff are not subject to the arbitration provision, we must determine whether Plaintiffs' claims relate to a permanent layoff. We conclude that they do. Defendants assert that only the payment of no-fault separation pay establishes that an employee has been permanently laid off. In other words, according to Defendants, they have the unilateral power to determine if a permanent layoff has occurred by either paying or withholding no-fault separation pay. Such an understanding of the EmPact Agreement is, in the words of the district court, "exactly backwards." *Staley v. Hotel 57 Servs., LLC*, No. 22-cv-6781, 2023 WL 4339678, at *3 (S.D.N.Y. July 5, 2023). The "No-Fault Separation Pay" section explains that a permanent layoff entitles an employee to separation pay; accordingly, determining if the employee has been permanently laid off is the antecedent question to whether an employee receives separation pay—not the other way around. *See* J. App'x at 117. And as for the question of whether an employee has been permanently laid off, the agreement directs that question be answered according to how the claim is "defined by law." *Id.* at 115.

We therefore look to New York law to define a "permanent layoff." Assuming (without deciding) that the parties did not intend to be bound by a New York regulation defining "permanent layoff" that was not yet in existence at the time the parties executed their respective contracts or at the time Plaintiffs filed suit, *see* N.Y. Comp. Codes R. & Regs. tit. 12, § 921-1.1(f)(1)(iii)(d), the New York WARN Act, which was in place at the time the contracts were executed, defines an "employment loss" as, *inter alia*, "a mass layoff exceeding six months," N.Y. Lab. Law § 860-a.[2] Here, Plaintiffs allege that they were furloughed for an indefinite period of time beginning in March 2020, and that the Hotel has not brought them back to work since then. Defendants provide

---

[2] Similarly, the federal WARN Act defines an "employment loss" as, *inter alia*, "a layoff exceeding 6 months." 29 U.S.C. § 2101(a)(6).

no contrary authority that, under New York law, a layoff lasting almost two and half years at the time of suit—and that still does not have a definite end—may be considered temporary if there exists a right to recall at some indefinite point in the future. We accordingly hold that Plaintiffs, who are the non-moving party and are therefore entitled to have all reasonable inferences drawn in their favor, have plausibly alleged that they were subject to a permanent layoff. Defendants argue, however, that Plaintiffs' use of the term "termination" throughout their complaint facially subjects their claims to the arbitration provision, which covers claims based on "termination." J. App'x at 115. But it is clear that Plaintiffs use that term to refer to a no-fault termination, which is treated the same as a permanent layoff under the EmPact Agreement. *See id.* at 117 ("If I receive a permanent layoff with no right of recall or I am terminated for no fault, my termination will be considered 'no-fault.' I understand that I may not seek mediation or arbitration of a permanent lay-off or 'no-fault' termination under Step 6 of C.A.R.E.").

In sum, Plaintiffs' claims relate to a permanent layoff or no-fault termination, which are not subject to the arbitration agreement.

## II. Motion to Dismiss Class Claims

FSR also challenges in this appeal the district court's denial of Defendants' motion to dismiss class claims, which the district court denied without prejudice. Defendants had moved to dismiss the class claims on the basis that Plaintiffs waived their right to bring such claims under the EmPact Agreement, which allegedly contains a class action waiver provision. However, under the FAA, this Court's appellate jurisdiction is limited to reviewing an interlocutory appeal from "an order . . . denying a petition . . . to order arbitration to proceed." 9 U.S.C. § 16(a)(1)(B); *see Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023). Therefore, absent the application of an established doctrine or rule allowing for review of an interlocutory order before a final judgement

9

has been issued, this Court lacks appellate jurisdiction to review the district court's interlocutory order denying the motion to dismiss class claims. *See* 28 U.S.C. § 1291; *Petrello v. White*, 533 F.3d 110, 113 (2d Cir. 2008).

FSR appears to argue that the pendent appellate jurisdiction doctrine applies here. "[P]endent appellate jurisdiction is only appropriate where an issue is 'inextricably intertwined' with the other issues on appeal giving rise to the appellate court's jurisdiction or is necessary to ensure 'meaningful review' of those issues." *Ogunkoya v. Monaghan*, 913 F.3d 64, 72 (2d Cir. 2019). However, the question of whether Plaintiffs waived their right to bring class action claims is wholly separate from the question of whether Plaintiffs' claims are covered by the arbitration agreement. Indeed, our analysis above does not rely on or even reference the class action waiver. And FSR itself acknowledges that the issues are distinct. *See* FSR Br. at 30 ("Indeed, the class waiver provision stands apart from any dispute regarding what types of claims are amenable to arbitration, and should be enforced regardless of whether this dispute is ultimately referred to arbitration."). Therefore, this Court may not exercise pendent appellate jurisdiction over the district court's denial of the motion to dismiss class claims, and FSR does not identify any other jurisdictional basis upon which we could exercise review of that claim.

\* \* \*

We have considered Defendants' remaining arguments and find them unpersuasive.  For the reasons stated above, we **AFFIRM** the district court's order denying the motion to compel arbitration and **DISMISS** for lack of appellate jurisdiction the appeal of the district court's order denying the motion to dismiss class claims.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk